ALAMANCE INDUSTRIES, INC., et al.,
Plaintiffs, Appellants,

v.

FILENE'S, Defendant, Appellee.

No. 5781.

United States Court of Appeals
First Circuit.

May 24, 1961.

Charles F. Choate, Boston, Mass., with whom Joseph C. Cressy, Jr., Boston, Mass., was on the brief, for appellants.

W. R. Hulbert, Boston, Mass., with whom Edgar H. Kent, Martin Kirkpatrick, and Coleman T. Bahn, Boston, Mass., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This appeal, involving unsuccessful attempts by a plaintiff to dismiss prior to trial under Fed.R.Civ.P. 41(a) (2), 28 U.S.C., requires an extensive examination of the factual background. Plaintiff-appellant Alamance Industries, Inc., and two other plaintiffs, all North Carolina corporations hereinafter collectively called Alamance, are owners of, and manufacturers under, the so-called Bird patent, No. 2,841,971, issued July 8, 1958. The patent is for a highly compressive, all-nylon, ladies' stocking allegedly providing substantial therapeutic support. Alamance asserts that it has invested over a million dollars in plants and equipment for commercial production, and over a million dollars in advertising. Upon the issuance of the patent Alamance notified the trade in strong terms, but, although it appeared that there was considerable infringement, instituted no suits. On December 18, 1958, a number of competing manufacturers commenced an action against Alamance for a declaratory judgment of invalidity in the United States District Court for the Middle District of North Carolina. Among the plaintiffs was Burlington Industries, Inc., a Delaware corporation with an office in North Carolina. Not among them was Manchester Hosiery Mills, a New Hampshire corporation. Alamance filed a counterclaim for infringement. On July 23, 1959, Alamance brought the present action for infringement in the United States District Court for the District of Massachusetts against Filene's, a retailer then selling admittedly infringing stockings manufactured by Manchester. Manchester was not joined, nor otherwise sued. On November 2, 1959, Alamance brought infringement suits in various parts of the country against six more retailers or jobbers.

During this period intensive pretrial discovery was under way in the North Carolina suit. After November 2d the plaintiffs there applied for an injunction to restrain Alamance from bringing further retailer actions. The court denied this application without prejudice, but informally instructed Alamance to bring no more suits and advised all parties to allow those which had already been brought to lie dormant, and to concentrate their efforts in North Carolina. This suggestion seems to have been followed until September 1960, when Filene's, at what would now appear to be Burlington's instigation, took steps to bring its case to trial.

The Filene's case was originally drawn to Judge McCarthy. When he retired on May 31, 1960, it was transferred to another judge. On June 20, 1960, a Mr. Hulbert, now admittedly Boston patent counsel for Burlington, entered his appearance for the defendant Filene's. On September 2d Filene's filed a formal notice of prior art under 35 U.S.C. § 282(4), and requested a pretrial conference and assignment of a trial date. Alamance immediately moved for an order for a stay until final decision of the North Carolina case. Accompanying Alamance's motion was an affidavit of its counsel, a Mr. Fletcher of New York, describing the North Carolina case and the extensive pretrial proceedings therein. These included depositions of some 25 witnesses comprising some 3500 pages of transcript, 400 exhibits, and an expenditure of substantial amounts of money. In an accompanying legal memorandum Alamance set forth the importance of the North Carolina action, and why it should be tried first. Filene's responded with an affidavit of counsel for the plaintiffs

in the North Carolina suit, the thrust of which was that trial there could not be expected for four or five months.

■ The hearing on Alamance's motion for a stay took place on September 16. It was of short duration. It commenced by the court's inquiring how soon the defendant would be ready for trial. Mr. Hulbert replied, "Any time from thirty days on. * * * The case hangs as a cloud over the defendant, Filene's and Manchester Hosiery Mills." He stated in answer to a question, however, that he had "no way of knowing" what Filene's "volume of hosiery is."[1] He then said, "I don't say that it is necessarily urgent. This is one of numerous suits brought by the other side and hangs as a cloud over the industry." The court asked Mr. Fletcher why he did not want to try. Upon his referring to the effort and expense in preparation for the trial in North Carolina, the court said, "Do you want to drop this one and go ahead in North Carolina?" Mr. Fletcher answered that he had offered to be bound by the decision on validity in North Carolina; that they had been working two years there and none here, and could not be ready here. Counsel then asked Mr. Hulbert if he would agree to a dismissal without prejudice, and received a negative answer. The court thereupon stated, "You go ahead in thirty days or as soon thereafter as you can be reached. * * * When you come here, you come here to a judge that disposes of business promptly for the public interest regardless of the private interests. I am not going to have a case—I don't care what any other judge has—which lasts on my docket an inexcusably long period of time. * * * You have gotten the defendant to spend money to get a lawyer." The court then offered counsel the choice of a dismissal with prejudice or trial in sixty days "and be bound thereby." Mr. Fletcher replied, "I think we will have to prepare for trial in sixty days."[2]

The court then proceeded to pretry the case. Mr. Hulbert announced that Manchester was "the party who is actively defending," offered to stipulate to infringement of claim one, but stated that he wished to try all claims. He further stated that Filene's had sold hosiery made by Burlington, but did not reply to Alamance's response that this was not in issue.[3] The defendant sought to file a counterclaim, but withdrew the attempt when the court volunteered that trial would have to be delayed further if other issues were brought in.

On September 27, 1960, Alamance filed a formal motion under Rule 41(a) (2) to dismiss "without prejudice on the condition that plaintiffs shall never again sue the defendant, Filene's." In addition it offered to pay defendant's counsel fees and costs. Affidavits were filed by both sides. One of Filene's contained documents indicating that Alamance's suits

1. This statement apparently reflects, what is elsewhere made clear, that Filene's was thoroughly shielded from any "cloud" by an indemnity umbrella. Arguments now presented to us in respect to Filene's involvement must be considered in that light.

2. Throughout its brief defendant argues that Alamance "elected" to go to trial. So does a man who walks the plank "elect" to swim. This is not to say that there may not have been good cause to compel such action, but this is another matter.

3. Defendant makes the statement that this constituted a "withdrawal" by Alamance. We find this surprising, since admittedly Burlington stockings were not being sold by Filene's when the complaint was filed. There was nothing to withdraw. Rather, we think counsel for defendant should have made fuller disclosure at the time of Burlington's interest. It now appears that subsequent to the filing of the complaint Burlington had agreed to pay one-half of the fees and expenses, and that with the activation of the suit Burlington had agreed to pay three-quarters of the fee. There could be no better evidence that this had become a Burlington suit. It was not simply Manchester who was "actively defending." In defendant's brief before us it is now stated that Burlington's "interest was direct, immediate, bona fide, and indeed urgent." We take this last as meaning that it was urgent to Burlington to try this case ahead of the suit which it had brought in North Carolina.

against retailers, and its failure to sue manufacturers, were part of a preconceived plan to obtain maximum interference with the sale of infringing stockings at the retail level. These affidavits did not indicate, however, that Alamance was in any way delaying the trial of the North Carolina case. On the contrary, Filene's repeatedly told the court that Alamance was "moving Heaven and earth" (as if it were something reprehensible) to hasten the trial of the North Carolina case so that it could be heard first. Of even greater interest, because of the contention that it now makes, was its argument that Alamance had made a "binding" election at the September 16 hearing, totally precluding consideration of its new motion. Realizing that this might weaken its position before us, it now asserts that the new motion involved, and that the court exercised, discretion.

In view of this contention we will review briefly the proceedings of October 4, when argument on the motion was heard. The court first announced that it had read all the papers and briefs. When Mr. Fletcher brought up the matter of discretion, the court replied, "Neither the defendant nor I asked that we be called upon, but we have been called upon, and having been invited we will stay until the conditions that we have laid down are met." Mr. Fletcher stated that he felt the terms of his motion were equivalent to a dismissal with prejudice as to the party in interest and thus met the court's previously stated conditions. The court. "No. If you so understood you did not understand what I said in the plainest language * * * Speak now or you will be held to your original choice." After some discussion as to how long counsel would have so to elect, counsel stated, "I didn't take what you said before as a binding ruling, your Honor." The court. "That is merely because you don't know me."

■ On this record it cannot be suggested that the court exercised a new discretion on October 4. Accordingly, we review the correctness of the court's de-

cision as of September 16, and not as an exercise of discretion in the light of any subsequent information.

Before leaving this subject, we mention briefly that in early November new, Massachusetts, counsel appeared for Alamance. At this time Alamance again requested a stay and again sought to dismiss—this time in alternative forms: simply "without prejudice," or upon whatever terms and conditions the court would properly determine. Counsel brought to the court's attention, seemingly for the first time, the request of the North Carolina court that other cases should not proceed, but the court stated that nothing would influence it to change its mind. Thereafter, on November 16 the court took evidence from the defendant, Alamance remaining mute, following which the complaint was dismissed and extensive findings were made. Alamance appeals.

We may agree that so many suits were a cloud over the industry and should not have been brought. But we feel far more strongly that the present case should not have been activated and insisted upon by the defense. Forcing a trial, assuming this suit was harassing too, did not cure any harm caused by Alamance's having initiated vexatious litigation against other retail outlets. The other suits were not vexatious as against Filene's, nor, so far as appears, as against Manchester. Insofar as they were vexatious to Burlington, this was not a concern of the court below where Burlington's stockings were not involved. Furthermore, even if the present suit was vexatious as against Filene's, this would be fully expiated by the proposed dismissal with prejudice. We do not regard one single retailer suit as vexatious against Manchester.

■ Apparently what principally lay behind the district court's determination to try the case is to be found in its remark, made at the first hearing, that the "public interest" of not having a case lie on its docket for fourteen months must control "regardless of private interest." We cannot accept this statement

either as the formulation of a generally applicable principle or as a proper criterion for the disposition of this particular case. Courts exist to serve the parties, and not to serve themselves, or to present a record with respect to dispatch of business. Complaints heard as to the law's delays arise because the delay has injured litigants, not the courts. For the court to consider expedition for its own sake "regardless" of the litigants is to emphasize secondary considerations over primary.[4]

If, in speaking of the public interest in speedy trials, the court could be regarded as making special reference to patent litigation, see, e. g., Bresnick v. United States Vitamin Corp., 2 Cir., 1943, 139 F.2d 239, 242; Mercoid Corp. v. Mid-Continent Investment Co., 1944, 320 U.S. 661, 665, 64 S.Ct. 268, 88 L.Ed. 376, that interest was centered in North Carolina. A trial there was inevitable in any event. That suit was the principal one, and North Carolina was the primary forum in which to try—not only because it was first, but because of the number of substantial parties before the court, and the time and effort which had been spent in preparation. See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 3 Cir., 1951, 189 F.2d 31, 34–35, affirmed 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200; Northern Ins. Co. of New York v. Grone, D.C.M.D.Pa.1954, 126 F.Supp. 457, 458; cf. Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 1952, 342 U.S. 180, 183–184, 72 S.Ct. 219, 96 L.Ed. 200. Indeed, quite possibly the North Carolina court could have enjoined Burlington's affirmative pressing of the Massachusetts case for trial. See Martin v. Graybar Electric Co., 7 Cir., 1959, 266 F.2d 202, 203–205; Barber-Greene Co. v. Blaw-Knox Co., 6 Cir., 1957, 239 F.2d 774, 778; cf. Kerotest

Mfg. Co. v. C-O-Two Fire Equipment Co., supra, 342 U.S. at pages 184–185, 72 S.Ct. at pages 221, 222; Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 1942, 129 F.2d 848, 852. The North Carolina action was proceeding with all diligence. Nothing was to be gained by an additional trial in Massachusetts which could have been entirely obviated by the stipulation proposed by Alamance.[5] Nor, as we have already said, was there any public interest furthered by some principle of punishing Alamance for having brought other suits.

■ If, in fact, the court made any attempt to weigh the competing private interest of the parties, it was equally in error. Much of defendant's brief is devoted to arguing that Alamance could have been ready for trial. The question is not whether it was physically possible, but whether it was necessary. While there is no absolute right to dismiss on terms, Diamond v. United States, 5 Cir., 1959, 267 F.2d 23, 25, certorari denied 361 U.S. 834, 80 S.Ct. 85, 4 L.Ed.2d 75, the intendment of Rule 41(a) (2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions. 5 Moore, Federal Practice ¶ 41.05 (2d ed. 1951). Whether, and on what terms, a dismissal without prejudice may be granted, is a matter left initially to the trial court's discretion. Larsen v. Switzer, 8 Cir., 1950, 183 F.2d 850, 851; see Shaffer v. Evans, 10 Cir., 1958, 263 F.2d 134, 135, certiorari denied 359 U.S. 990, 79 S.Ct. 1119, 3 L.Ed.2d 978; Adney v. Mississippi Lime Co. of Missouri, 7 Cir., 1957, 241 F.2d 43, 45–46; Lyman v. United States, 1 Cir., 1944, 138 F.2d 509, certiorari denied 320 U.S. 800, 64 S.Ct. 429, 88 L.Ed. 483. But that does not excuse the failure to exercise any discretion, see Martin v. Graybar

4. We do not, of course, mean by this that the court does not have an interest in disposing of its docket. But that is not to say that the calendar is to be a mechanical measure.

5. Filene's now argues that Alamance made no specific offer to be bound with respect to Manchester, as distinguished from Filene's, by the outcome of the North Carolina case. This seems an obvious afterthought. Neither the court nor counsel explored the extent of Alamance's offer.

Electric Co., supra, 266 F.2d at page 203; cf. Grivas v. Parmelee Transp. Co., 7 Cir., 1953, 207 F.2d 334, 338, certiorari denied 347 U.S. 913, 74 S.Ct. 477, 98 L.Ed. 1069; Harvey Aluminum, Inc. v. American Cyanamid Co., D.C.S.D.N.Y. 1953, 15 F.R.D. 14, 18, or save from reversal an unpermitted exercise. We have already expressed our belief that the court did not even purport to exercise discretion. But were we to assume that it did, the reasons given—that Alamance had brought the suit, and obliged the defendant to employ counsel to file an answer—were patently insufficient. These were merely a recitation of the very circumstances that call the rule into play. Something else was needed, and we find nothing else present. By the dismissal offered Filene's would, of course, be protected. Burlington had no right to be. Since Manchester, although a competitor of Burlington, was willing to be represented by Burlington counsel in Massachusetts, we see no hardship for it to be so represented in North Carolina. Infringement was admitted. On the question of validity, the place of trial could not have been vital. As to date of trial, Manchester had indicated no urgency until Burlington's counsel had appeared, with Burlington assuming three-quarters of the expense. Finally, if the makeup of the court was thought important, this was a matter scarcely to be encouraged.

The suit must be remanded to the district court. If, within thirty days, Alamance moves to dismiss with no further action to be brought against defendant Filene's, that motion should be granted. If, in addition, the defendant requests a stipulation that Alamance and Manchester be bound, *inter sese*, by the final outcome of the North Carolina suit, (now pending on appeal) Alamance shall accede, and it shall assist Manchester's intervention if Manchester so wishes.

Judgment will be entered vacating the findings and judgment of the District Court, and remanding the action to that court for further proceedings consistent herewith.