**Nannette B. DAVIS, Appellant,**

v.

**UNITED STATES STEEL CORPORATION and its Division, USS Agri-Chemicals, Appellees.**

No. 85–1302.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 12, 1985.

Decided Dec. 12, 1985.

Rehearing and Rehearing En Banc Denied Jan. 28, 1986.

---

Wilmot B. Irvin (Alison Renee Lee, McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, P.A., Columbia, S.C. on brief), for appellant.

Richard F. Lerach (William P. Simpson, McKay & Guerard, Columbia, S.C. on brief), for appellees.

Before JAMES DICKSON PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

Nannette B. Davis asserted against United States Steel Corporation a claim under the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, *et seq.* and three pendent state law claims for wrongful discharge, assault and battery, and intentional infliction of emotional distress. Davis was a secretary/receptionist at the Bamberg, South Carolina United States Steel facility and its only female employee. Davis produced testimony of numerous indignities at the hands of her immediate boss, Jim Bryan, who was responsible for hiring and firing. Over a fifteen month period she was subject to Bryan's questionable language, off-color and sexual jokes and innuendos, and frequent invasion of her privacy concerning her marital affairs and sexual relationship with her husband. She also reported verbal and sexual advances towards her by Bryan. Davis alleged that repeatedly Bryan recommended that she "ought to try it with somebody else besides my husband" and that she should "try it with a man." Finally, according to Davis, on August 21, 1981, Bryan explicitly asked her "Why won't you go to bed with me?".

Bryan's activities which Davis found offensive were, according to her, ones which took place at the workplace during working hours. Corroborating testimony for some of these incidents came from Davis' co-worker, Gene Cooke. In addition, Bryan's supervisor, Jim Stoutz, provided an affidavit that he personally witnessed a pat by Bryan on Davis' posterior, describing it as "an innocent friendly gesture." Davis testified that Stoutz witnessed several such incidents and overheard Bryan's remarks to her. Stoutz did not speak to Bryan about the incidents or inform his United States Steel supervisors about Bryan's conduct.

In August of 1981, in response to complaints by Davis, United States Steel conducted an investigation at the Bamberg facility. The investigation was conducted by Stoutz and his two immediate superiors. Bryan was advised to "cool off" for a week and was given time off for that purpose with pay. Davis testified that she believed that United States Steel would inform her of the action they were taking against Bryan. However, the company was not amenable to work assignments which would separate Davis from Bryan. Davis believed that United States Steel had not taken measures against Bryan and, in anticipation of his return, Davis tendered her' resignation on September 4, 1981.

Procedurally, the case progressed to a point where summary judgment was granted in favor of United States Steel on the common law claims. The theory was that *respondeat superior* was inapplicable since Bryan was not acting in furtherance of United States Steel's purposes. In order to achieve appealable status as a final judgment, Davis dismissed her Title VII claim. Of the remaining common law tort claims based on diversity of citizenship, Davis also dropped her wrongful discharge claim, leaving outstanding her appeal from the adverse judgment on her assault and battery and intentional infliction of emotional distress claims.

Our function on review is limited. We need only apply the same standard as that used by the court below, that is whether there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). "We must examine the record in a light most favorable to the party opposing the motion." *Smith v. University of North Carolina,* 632 F.2d 316, 338 (4th Cir.1980).

■ A majority of the panel has concluded from the factual background here presented that Davis could present a case permitting the fact-finder to establish, under the doctrine of *respondeat superior* that the observations and inaction of United States Steel's supervisory employee, Stoutz, should be imputed to the company. At the point in time when Stoutz observed Bryan's improper behavior and failed to inform either the company or Bryan that his behavior violated company policies, the matter could be said to have progressed from a frolic of Bryan's own to behavior known to United States Steel and condoned by it. Stoutz was a supervisory employee and Bryan's immediate superior. His knowledge of the activities of an employee subject to his supervision, in the face of his inaction, created the possible inference that United States Steel did not object or, in the absence of explicit complaint by Davis, intend to take any steps to curtail Bryan's behavior. Those circumstances would permit the factfinder to infer that toleration by Bryan's employer, United States Steel, of his behavior meant that it was not inimicable to the fostering of its purposes.

■ On the other hand, a different majority of the panel has concluded that, under South Carolina principles of *respondeat superior,* United States Steel would not be liable for Bryan's activities before Stoutz observed the employee's breach of company policy and failed to take action against Bryan. That case is essentially disposed of by one which also involved sexual misbehavior.[1] *Rabon v. Guardsmark, Inc.,* 571 F.2d 1277, 1279, 1282 (4th Cir. 1978):

> The parties agree, as did the district court and as do we, that under the doctrine of *respondeat superior,* as traditionally applied in South Carolina, Guardsmark was not liable for Roberts' intentional tort. *Lane v. Modern Music, Inc.,* 244 S.C. 299, 136 S.E.2d 713 (1964); *Adams v. South Carolina Power Co.,* 200 S.C. 438, 21 S.E.2d 17 (1942); *Courtney v. American Ry. Express Co.,* 120 S.C. 511, 113 S.E. 332 (1922). The assault by Roberts was manifestly not in

---

**1.** A security guard employed by the defendant was alone in defendant's building with the plaintiff who had been detailed to work at night.

The security guard "forcibly assaulted and raped the plaintiff at gunpoint."

furtherance of Guardsmark's business; it was the converse of Guardsmark's purpose—that of providing protection and that for which it was employed. The assault was to effect Roberts' independent purpose, and it was not within the scope of his employment. The mere fact that the tort was committed at a time that Roberts should have been about Guardsmark's business and that it occurred at the place where Roberts was directed to perform Guardsmark's business does not alter these conclusions.

. . . .

Plaintiff's right to recovery may be sustained only by extending the exception to the traditional rule of *respondeat superior* that a principal is not liable for his servant's unauthorized intentional tort in derogation of the common law. But the South Carolina courts have been reluctant to expand tort liability.

With respect to the situation once knowledge could be imputed to the corporation through Stoutz, however, as we have earlier indicated, a majority of the court feels otherwise. The testimony Stoutz provided in his affidavit was:

> I do recall on one occasion when I was at the Bamberg facility seeing Mr. Bryan gently pat Mrs. Davis one time on the backside as she alighted from a stool. This appeared to be an innocent friendly gesture which I did not take particular note of at the time. At no time did I ever witness, sanction or approve any harassment or offensive touching of Mrs. Davis by Mr. Bryan or any other employee.

A jury as finder of fact could permissibly conclude that the conclusion reached by Stoutz that this was an "innocent friendly gesture" was unjustified and that he, as a supervisor, had a responsibility flowing from his employment by United States Steel to take necessary corrective action. *See* Restatement of Torts Second § 317:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant is upon the premises in possession of the master and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control.

Accordingly, while the behavior of Bryan, despicable as it appears to be at the current posture of the case, where all factual matters are to be viewed in the plaintiff's favor, standing alone, cannot be the basis for a recovery by Davis for assault and battery or intentional infliction of emotional distress, the situation is otherwise with respect to the observations of Stoutz and his failure to take any action. In view of the materials bearing on inaction of Stoutz, summary judgment was inappropriate and the case is reversed and remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BUTZNER, Senior Circuit Judge, concurring and dissenting:

I join in holding that Stoutz's failure to take action against Bryan for his misconduct is sufficient to vacate the summary judgment. I would go further, however, and hold that the jury should be permitted to determine whether United States Steel is vicariously liable for Bryan's acts that occurred before Bryan's superior became aware of his misconduct.

I cannot accept the company's analysis that because the acts of sexual harassment were motivated by personal desires, Bryan as a matter of law was not acting within the scope of his employment while harassing Davis. Under the company's approach, Bryan's supervision of Davis was constantly flitting in and out of the scope of his employment, depending on whether or not he was flirting with Davis or brushing against her at any particular time during the course of his supervisory duties.

South Carolina law holds an employer vicariously liable for the torts of its employees that are committed within the scope of their employment. If there is doubt "whether the servant in injuring a third person was acting at the time within the scope of his authority, the doubt will be resolved against the master at least to the extent of requiring the question to be submitted to the jury for determination." *Adams v. South Carolina Power Co.*, 200 S.C. 438, 441, 21 S.E.2d 17, 19 (1942).

In a federal court, the allocation of functions between the judge and the jury is governed by federal law. *Wratchford v. S.J. Groves & Sons Co.*, 405 F.2d 1061, 1064–66 (4th Cir.1969). In this instance, I believe federal law would be identical to the sensible proposition stated by the South Carolina Supreme Court. Thus, the doubt about Davis's claim that Bryan was acting within the scope of his authority when he harassed her, raises an issue that should be submitted to the jury. I would hold that where acts of harassment are pervasively intermingled with the performance of supervisory duties, the supervisor does not cease as a matter of law to be acting within the scope of his employment.

The evidence, viewed most favorably for Davis at this stage of the proceedings, discloses that United States Steel delegated to Bryan the authority to supervise Davis, and he did so in a tortious manner. The acts of harassment were interwoven with the performance of his duties as supervisor. Bryan's supervision of Davis, albeit wrongfully executed, was in furtherance of United States Steel's business.

Unfortunately, as cases and commentaries demonstrate, sexual harassment at the work place is foreseeable. Indeed, its occurrence is so well known that many employers, including United States Steel, have made rules forbidding it. "An act, although forbidden, or done in a forbidden manner, may be within the scope of employment." Restatement (Second) of Agency § 230 (1957); *accord Carroll v. Beard-Laney, Inc.*, 207 S.C. 339, 343, 35 S.E.2d 425, 426 (1945). Thus, a jury, not the

judge, should determine whether United States Steel is vicariously liable for foreseeable acts of sexual harassment incident to Bryan's discharge of his duties. *See* Restatement (Second) of Agency § 229 (1957).

*Rabon v. Guardsmark, Inc.*, 571 F.2d 1277 (4th Cir.1978), on which the company relies, is readily distinguishable from this case. The rape in *Rabon* was not a pervasive feature of the security guard's performance of his job. Rather, it was an isolated act that clearly negated the performance of the guard's duties. By contrast, a jury could reasonably find that Bryan's acts of sexual harassment were part and parcel of his supervision of Davis. For example, the jury could consider that his threat to fire Davis if she became pregnant during the busy season was an act incidental to his authorized duty to hire and fire a person in Davis's position. In short, Bryan's acts did not negate his duties in the way that the rape by the security guard negated the guard's duties.

The jury should be permitted to determine whether United States Steel is vicariously liable for all of Bryan's tortious conduct, not merely for wrongful acts that occurred after Bryan's superior became aware of his misconduct in the performance of his duties. Consequently, I dissent from the limited relief granted Davis in this appeal.

JAMES DICKSON PHILLIPS, Circuit Judge, concurring in part and dissenting in part:

I would affirm in full the district court's dismissal of plaintiff's common law claims against United States Steel based upon the offensive physical and verbal acts of Bryan, its employee.

If those acts were done—as some of them concededly were done—they were utterly reprehensible, no matter what their particular coloration or context and even if, as alleged by defendant, some may not have been directly resisted or contemporaneously objected to by plaintiff. Certainly the common law of South Carolina makes

such acts tortious and remediable as against the employee.

But the question here is not whether those acts are tortious at the hands of the actor, but whether under the common law of South Carolina, on the evidence before the court, *and* under the legal/factual theories advanced in the trial court and here, the employer, United States Steel, should be held liable for those acts. I agree with the district court that on the common law theories advanced and the evidence laid before the court on the summary judgment motion, United States Steel was not liable as a matter of law.

Only two theories of liability were advanced below, and are urged on this appeal: vicarious liability under respondeat superior, and liability by virtue of "ratification" or affirmance by United States Steel of Bryan's acts.

I agree with the district court and with the lead opinion on this appeal, that as a matter of South Carolina law the employer here is not liable vicariously on a respondeat superior theory. Specifically, I agree that *Rabon v. Guardsmark, Inc.*, 571 F.2d 1277 (4th Cir.1978), is direct precedent for the proposition that under South Carolina law, an employee's acts, such as those here, that are wholly prompted by personal sexual desires, even though committed on the employer's premises during work hours, cannot constitute acts done "in furtherance of the employer's business," within fair contemplation of the controlling common law principle. That principle cannot properly be extended to include such acts simply on the basis that the employee's acts were made possible or more easily accomplished by virtue of the employment setting and relationships. To do so would effectively convert the principle into no more than an on-the-job test, which would wholly undercut it as a limiting principle.

Similarly, the principle cannot properly be extended to include such acts simply on the basis that in retrospect they can be seen to have "furthered the master's business" in some purely fortuitous and attenuated way, as by speeding a subordinate along by a physical assault, including an offensive sexual touching, that was never intended for that purpose.

The only other legal/factual theory actually advanced by the plaintiff below, either in her pleadings or in resisting the defendant's summary judgment motion, was that of "ratification" or "affirmance" by United States Steel of Bryan's conduct. This was claimed to have occurred by the defendant's failure to take punitive action against Bryan, including possibly discharging him. Again, I agree with the district court in its well-reasoned explanation of why that common law agency principle simply was not invoked by the evidence before the court. As the court pointed out, ratification can only occur with respect to a servant's acts which did not then bind the master but which were done or professedly done on the master's account, citing, quite properly, Restatement (Second) of Agency, § 82. Here, where the acts done were not done or professedly done on United States Steel's account, they simply are not subject to ratification under the basic principle.

At this point I differ with the lead opinion, which, without dealing directly with the ratification theory, finds a basis for establishing liability on still a third theory which, though related to ratification, is distinctly not that theory. Relying on Restatement (Second) of Torts, § 317, the lead opinion (possibly joined by Judge Butzner in his separate opinion) holds that there was evidence from which a jury might have found United States Steel directly liable in tort for its negligent failure or refusal to control Bryan *after* it learned, through Stoutz and directly from plaintiff, of Bryan's conduct.

As indicated, this theory is distinct from that of ratification, and in critical ways. Its proof turns upon quite different circumstances than those giving rise to ratification, and its establishment would lead to a quite different basis of liability, hence remedy. Most critically, it would relate only to employee acts continued after the employer learned of the employee's conduct, while ratification and its remedy

would relate to prior acts. In this very case, that could make a very great difference, both in respect of liability and remedy.

Not only was this "negligent failure to control" theory not pleaded or otherwise advanced below, it was not urged upon us on this appeal. Here, as in the district court, the plaintiff only claimed liability on respondeat superior and ratification theories.

We should not of course automatically refuse to consider theories of claim or defense not properly before us because of procedural defaults or unintended "elections." Though procedural default rules advance important ongoing values of the adversarial system, they are not ultimate values. Where a more expansive view of the theories effectively presented by a party can be indulged in fairness to the other party, and where justice in the case requires it, courts should not be unwilling to consider them simply because of a purely technical failure to have raised them by name. Civil Rule 15(b)'s litigation-by-consent principle, for example, embodies that very notion.

But here I think we cannot, in fairness to United States Steel, sua sponte, and at this late stage, invoke this negligent failure to control theory, never suggested by the plaintiff, as a basis for possible liability. As indicated, proof of this theory, and correspondingly of the defenses to it, would require quite different evidence in detail than could have been anticipated by defendant from the theories actually advanced. The district judge did not consider it, for the obvious reason that the plaintiff did not invoke it. Under the circumstances, I think we should not do so, still without party prompting.*

The impulse to try to find a fair means for holding a financially responsible employer liable for this sort of egregious misconduct of its presumably less financially responsible employee is understandable. But because of the plaintiff's own tactical choice to forego the more expansive substantive bases for employer liability under Title VII, the only remaining means in this case are those provided by the common law. That law imposes wise, not unreasonable, limits on the range of an employer's liability for its employee's conduct. I believe that, faithfully applied here, they preclude holding United States Steel liable under either of the common law theories of liability advanced by plaintiff in this litigation.

I regret, therefore, that I cannot join fully in the lead opinion's announced result.

---

* At most, I think we should not do more than point out that upon the remand required by the court's decision, the plaintiff might of course move to amend her pleadings to introduce this quite different theory of liability. This would at least allow the district court to exercise the discretion which should first be exercised by that court and not by ours, to consider whether, in terms of practical fairness, this new theory should be allowed belatedly into the case. And if allowed by that court, this would at least give defendant an opportunity not yet had to marshal and present any evidence it may have available to avoid liability under that theory.