**Nannette B. DAVIS, Plaintiff-Appellant,**

v.

**USX CORPORATION,
Defendant-Appellee.**

No. 86–3705.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1987.

Decided June 3, 1987.

---

**3.** Judge Kelly would grant 120 days for compliance.

Wilmot Brown Irvin (R.W. Dibble, Jr., McNair Law Firm, P.A., Columbia, S.C., on brief), for plaintiff-appellant.

Richard Fleming Lerach, for defendant-appellee.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Plaintiff Nannette B. Davis sued her employer USX Corporation (formerly United States Steel Corp.) asserting claims under the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 *et seq.*, (title VII) and several pendent state law causes of action, includ-

ing assault and battery and intentional infliction of emotional distress. Davis alleges that she was sexually harassed by her boss, Jim Bryan, while she was employed by USX at a facility in Bamberg, South Carolina. We heard one previous appeal of this action in which we reversed the district court's order of summary judgment for USX. *Davis v. United States Steel Corp.*, 779 F.2d 209 (4 Cir.1985). Upon remand to the district court following that decision, Davis filed a motion for voluntary dismissal without prejudice pursuant to F.R. Civ.P. 41(a)(2). After Davis refused to accept certain conditions imposed by the district court on her motion for voluntary dismissal, the motion was denied. The district court subsequently dismissed the plaintiff's action with prejudice in July of 1986. The plaintiff appeals, challenging, among other things, the district court's order denying the motion for voluntary dismissal. We reverse.

I.

After the plaintiff filed her suit against USX, the case progressed until the district court granted summary judgment in favor of USX on the plaintiff's state common law claims. The district court ruled that South Carolina law does not recognize a theory which imputes liability to USX for the actions of its employee Bryan. Davis then dismissed her title VII claim in order to appeal the district court's decision on her state law claims. At the same time, Davis filed suit against USX and Bryan in South Carolina state court alleging claims of assault and battery, intentional infliction of emotional distress, and invasion of privacy. Davis sought recovery against USX on these claims in her state court action based on a respondeat superior theory which would impute Bryan's actions to USX for the purposes of determining USX's liability to Davis.

On appeal of the district court's summary judgment order, a divided panel of this court reversed. Davis had alleged that sometime during July of 1981, Bryan's superviser, Jim Stoutz, knew or should have known that Davis was the victim of offen-

sive sexual conduct on the part of Bryan. In August of 1981, Stoutz, on behalf of USX, conducted an investigation of the allegations of Bryan's misconduct in response to complaints by Davis, but took no action against Bryan. Based on these allegations, we reversed and remanded to the district court to allow Davis to pursue her state law claims against USX for Bryan's actions after the date that USX's supervisory employee, Stoutz, became aware of those actions.

In that decision, Judge Murnaghan, with Judge Butzner concurring and Judge Phillips dissenting, held that Davis could present a case permitting the factfinder to establish that the observations and inaction of United States Steel's supervisory employee, Stoutz, should be imputed to the company. *Id.* at 211. Judge Murnaghan, this time with Judge Phillips concurring and Judge Butzner dissenting, also concluded that under South Carolina law, USX was not liable for Bryan's actions which occurred prior to the date when Stoutz first observed Bryan's reprehensible behavior. *Id.* Judge Butzner filed a separate opinion, concurring in part and dissenting in part. He expressed the view that USX could be held liable under South Carolina law for Bryan's acts that occurred before and after the date that Stoutz observed them. *Id.* at 212–13. Judge Phillips also wrote a separate opinion, concurring in part and dissenting in part, to state his view that under South Carolina law, the plaintiff's allegations were insufficient to impute liability for Bryan's actions to USX at any time. *Id.* at 213–15.

After the case was remanded to the district court for further proceedings, Davis filed a motion for voluntary dismissal without prejudice pursuant to F.R.Civ.P. 41(a)(2) because she planned to pursue her common law claims in the action which she had filed in state court.[1] In considering the motion, the district court was primarily concerned that Davis should not be allowed to pursue her common law claims against USX other than on a theory of negligent supervision. The district court's view in this regard was based on its reading of our previous opinion in this case which it felt limited the plaintiff to a cause of action for negligent supervision. The district court imposed four conditions to which Davis was to agree before the motion would be granted:

(1) Payment of a reasonable portion of USX's costs and attorneys' fees for the litigation Davis pursued in federal court.

(2) Agreement that the discovery material developed in federal court could be used in the state court proceeding.

(3) Agreement not to pursue the state law claims against USX on a theory of respondeat superior in state court.

(4) Agreement that the only cause of action that Davis would pursue against USX in the state court action would be the negligent failure of USX to supervise Bryan after the date Stoutz observed Bryan's improper behavior against the plaintiff.

Because Davis refused to agree to meet these conditions, her motion for voluntary dismissal was denied.

Subsequently, Davis renewed a previous motion to amend her federal complaint to assert a cause of action for invasion of privacy. The district court denied the motion on April 10, 1986, on the ground that USX was not liable for the plaintiff's common law claims under the doctrine of respondeat superior. At a hearing on June 23, the district court issued a ruling excluding all evidence that Bryan harassed Davis prior to the date that Stoutz first became aware of this harassment.

In another pretrial ruling, the district court also ordered that the plaintiff could proceed to trial solely on a cause of action against USX for its negligent supervision of Bryan after the date that Stoutz became aware of Bryan's harassment of Davis. The initial effect of this ruling was to limit the damages which the plaintiff was entitled to recover at trial because, under

---

1. Davis, a resident of South Carolina, could not pursue her state law claims against Bryan in federal court because Bryan is also a resident of South Carolina and complete diversity would therefore not exist in an action against both USX and Bryan.

South Carolina law, a plaintiff may not recover damages for mental anguish or emotional distress based on a cause of action for negligent supervision. *Dooley v. Richland Memorial Hospital,* 283 S.C. 372, 322 S.E.2d 669 (1984); *Padgett v. Colonial Wholesale Distributing Co.,* 232 S.C. 593, 103 S.E.2d 265 (1958). Then, on July 3, 1986, Davis informed the district court that she had no evidence that she was physically injured by Bryan's misconduct. The parties thus stipulated to dismissal with prejudice of the plaintiff's cause of action against USX for negligent supervision. With no claim left for the plaintiff to bring to trial, the district court dismissed the plaintiff's action against USX on July 9, 1986. This appeal followed.

### II.

Rule 41(a)(2) allows a plaintiff, with the approval of the court, to dismiss voluntarily an action without prejudice at any time. Rule 41(a)(2) provides in pertinent part:

> Except as provided in paragraph (1) of this subdivision of this rule [dismissal before service or answer or dismissal by stipulation], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

The decision to grant a voluntary dismissal under Rule 41(a)(2) is a matter for the discretion of the district court, and its order will ordinarily not be reversed except for an abuse of discretion. *McCants v. Ford Motor Co.,* 781 F.2d 855, 857 (11 Cir.1986); *Kenrose Mfg. Co. v. Fred Whitaker Co.,* 512 F.2d 890, 895 (4 Cir.1972). ▮ The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced. *McCants, supra,* 781 F.2d at 856; *Alamance Industries Inc. v. Filene's,* 291 F.2d 142, 146 (1 Cir.1961), *cert. denied,* 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961). To fulfill this purpose, Rule 41(a)(2) requires a court order as a prerequisite to dismissal and permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice. In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant. *McCants, supra,* 781 F.2d at 856; *Hoffman v. Alside, Inc.,* 596 F.2d 822, 823 (8 Cir.1979); *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5 Cir. 1976).

The district court in this case considered two types of prejudice faced by USX in the event of dismissal: the fact that the plaintiff would pursue her state law claims against USX under a theory of respondeat superior in state court, and the significant resources expended by the defendant during the litigation of the plaintiff's claim in federal court. We will address both of these issues seriatim.

### A.

The district court concluded that pursuit of the plaintiff's common law claims in state court would unfairly prejudice USX because USX's liability under a theory of respondeat superior was foreclosed by our previous opinion in this case. We did not in that opinion, nor do we today, intend to address the issue of the appropriate cause of action under South Carolina law by which liability for Bryan's acts could be imputed to USX, after the date that Stoutz gained knowledge of Bryan's acts. We merely held in our previous decision that South Carolina would allow liability for Bryan's actions to be imputed to USX after the date that Stoutz observed Bryan's notorious acts.

Upon remand of our previous decision, the question arose of what cause of action South Carolina law would allow based on USX's imputed liability for the acts of its employee. Under the doctrine of respondeat superior, USX may be liable for the acts of its employee which were *within* the scope of his employment. Prosser, Law of Torts § 70 (1971); Restatement (Second) of Agency § 228(i) (1980). Under a theory of negligent supervision, USX may be held

liable for a failure to exercise reasonable care to control an employee from intentionally harming third parties while acting *outside* the scope of his employment. Restatement (Second) of Torts § 317 (1964). The scope of an employer's liability for negligent supervision is thus broader than the liability imputed to an employer under a theory of respondeat superior. The South Carolina courts have not clarified the scope of vicarious liability of an employer for the acts of its employees under South Carolina law under either of these theories of liability. *See Crittenden v. Thompson-Walker Co.*, 288 S.C. 112, 341 S.E.2d 385 (1986). But, under a theory of negligent supervision, South Carolina does not permit a plaintiff to recover damages for mental suffering. *Supra.*

If our previous opinion had established the scope of USX's imputed liability to the plaintiff, the district court's order conditioning dismissal upon the plaintiff's agreement not to assert claims barred by the law of the case would have been entirely proper. *See Pace v. Southern Express Agency*, 409 F.2d 331, 334 (7 Cir.1969) (denial of voluntary dismissal is appropriate where summary judgment is imminent); 5 Moore's Federal Practice ¶ 41.05[1] (1986).

In our previous opinion, however, the question of whether the plaintiff was to proceed against USX based on its imputed liability for the acts of Bryan under a cause of action based on respondeat superior or negligent supervision was not squarely presented. While our discussion of USX's imputed liability for the acts of its employee Bryan occasionally made reference to different theories of vicarious liability, these references were not intended to decide this question.[2] Because neither of these theories of imputed liability was foreclosed by the law of the case as set forth in our previous panel opinion, the district court should have granted the plaintiff's motion for voluntary dismissal without prejudice so that the plaintiff would have the opportunity to litigate this question in state court, with regard to Bryan's actions after they became known to Stoutz. *Cf. Smith v. Bounds*, 813 F.2d 1299 (4 Cir. 1987) (law of the case does not govern issues which the appellate court did not address).[3]

 It is well established that, for purposes of Rule 41(a)(2), prejudice to the defendant does not result from the prospect of a second lawsuit. *McCants, supra*, 781 F.2d at 857; *Hamilton v. Firestone Tire &*

---

**2.** The dissent maintains that our previous decision in this case held that USX was not vicariously liable in respondeat superior under South Carolina law for Bryan's conduct after the date that Stoutz became aware of that conduct. We deem this a misreading of what was said. As we have stated, we did not intend for references to the theory of negligent supervision or respondeat superior in that decision to resolve the nature of USX's vicarious liability under South Carolina law. But, contrary to the dissent's contention, our holding in the previous decision did state that the plaintiff might recover under state law under a theory of respondeat superior:

> A majority of the panel has concluded from the factual background here presented that Davis could present a case permitting the factfinder to establish, under the doctrine of *respondeat superior*, that the observations and inaction of United States Steel's supervisory employee, Stoutz, should be imputed to the company.

779 F.2d at 211. Judge Butzner, concurring in this portion of the court's opinion, also stated his view that the plaintiff should be allowed to pursue her claims under a theory of respondeat superior. *Id.* at 213 (Butzner, J., concurring

and dissenting). In fact, the only suggestion that the decision limited the plaintiff's cause of action to one for negligent supervision may be found in Judge Phillips' dissent to this part of the court's holding. *Id.* at 215.

**3.** The dissent also argues, without reference to any authority, that the doctrine of respondeat superior does not allow liability to be imputed to an employer because of the employer's knowledge of his employee's forbidden acts. "This very mechanical solution [to determining the scope of employer liability] has been losing ground in recent years" in favor of an approach which recognizes that foreseeability is the critical factor in determining whether an employee's actions were within the scope of his employment. Prosser, Law of Torts § 70 (1971). *Accord:* 53 Am.Jur.2d *Master and Servant* § 434 (1970); *Carroll v. Beard-Laney, Inc.*, 207 S.C. 339, 343, 35 S.E.2d 425, 426 (1945). Thus, while the issue is an open one under South Carolina law, it would be perfectly reasonable for the courts of that state to determine that liability for Bryan's actions should be imputed to his employer after the date that these actions were foreseeable by USX as a result of its supervisor's observation of those actions.

*Rubber Co.,* 679 F.2d 143, 145 (9 Cir.1982); *Home Owner's Loan Corp. v. Huffman,* 134 F.2d 314, 317 (8 Cir.1943); 5 Moore's Federal Practice, *supra,* at ¶ 41.05[1]. Moreover, the possibility that the plaintiff will gain a tactical advantage over the defendant in future litigation will not serve to bar a second suit. *Id.* Thus, in this case, the mere prospect of the transfer of litigation to state court was an insufficient basis for denying the motion for voluntary dismissal. "Ordinarily the mere fact that a plaintiff prefers the state courts ought not to prevent his discontinuing his suit; one court is as good as another." *Young v. Southern Pacific Co.,* 25 F.2d 630, 632 (2 Cir.1928) (Learned Hand, J., concurring).

Indeed, in cases involving the scope of state law, courts should readily approve of dismissal when a plaintiff wishes to pursue a claim in state court. In this case, for example, a lawsuit in state court is preferable because it would allow the courts of South Carolina to resolve a difficult question of state law. *Cf. Lehman Brothers v. Schein,* 416 U.S. 386, 390–91, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974) (certification of questions of state law by the federal courts "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism"). It must also be remembered that, absent compelling reasons or the consent of the parties, a district court's decision to condition dismissal on plaintiff's agreement not to assert state law claims in state court may unduly burden a plaintiff's right of access to such courts. Imposition of conditions limiting a plaintiff's recourse to the state courts may also be an affront to principles of comity because such conditions may usurp the authority of the state courts to resolve questions of state law. *See Oklahoma Pack-*

*ing Co. v. Oklahoma Gas & Elec. Co.,* 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 537 (1940) ("obviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case"). *Cf. Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971) (discussing principles of comity).

These principles are well established. In *Durham v. Florida East Coast Railway Co.,* 385 F.2d 366 (5 Cir.1967), the plaintiff sought voluntary dismissal after three weeks of trial in order to start the litigation anew because the plaintiff's motion to amend his complaint to account for newly discovered evidence had been denied as untimely. The Fifth Circuit reversed the order of the district court denying dismissal because the record failed to disclose "any prejudice to the defendant ... other than the annoyance of a second litigation upon the same subject matter." *Id.* 385 F.2d at 369. *See also Holiday Queen Land Corp. v. Baker,* 489 F.2d 1031 (5 Cir.1974) (district court abused its discretion by refusing to dismiss action without prejudice due to prospect of second suit despite contention by the defendant that the subsequent suit would be frivolous). Most recently, in *McCants, supra,* the Eleventh Circuit held that it was not an abuse of discretion for the district court of Alabama to dismiss voluntarily a suit without prejudice even though the plaintiff intended to refile his claim in the state courts of another state in order to escape the bar of Alabama's statute of limitations. The court concluded that the loss of a valid statute of limitations defense does not constitute a bar to dismissal under Rule 41(a)(2). 781 F.2d at 859.[4] Thus, in this case, the fact that dis-

---

**4.** Other courts have reached similar conclusions. In *Bolten v. General Motors Corp.,* 180 F.2d 379 (7 Cir.1950), the Seventh Circuit overturned the order of the district court denying dismissal on the ground that any prejudice to the defendant could be cured through establishing appropriate terms and conditions for dismissal. The court specifically held that such prejudice did not include the risk that the plaintiff's action would be refiled in a separate jurisdiction in order to escape the bar of the statute of limitations. *Id.* at 382.

In *Home Owner's Loan Corp. v. Huffman, supra,* the court considered the contention that dismissal without prejudice would deprive the defendant "of its alleged right to freedom from suit in another court upon the same cause of action." The court held that the "defendant does not have such an absolute right under" Rule 41(a)(2). 134 F.2d at 318. Moreover, no prejudice would occur from refiling in state court, the court found, because there was no showing of any unfair disadvantage to the defendant under the laws of Missouri. *Id.*

missal will subject USX to South Carolina law as interpreted by the courts of South Carolina if dismissal is allowed is not prejudicial to USX under the analysis called for by Rule 41(a)(2). *See also Clubb v. General Motors Corp.,* 14 F.R.Serv 2d 1434 (4 Cir.1971) (allegations of forum shopping are insufficient to support denial of motion for voluntary dismissal).

■ Thus, we hold that the mere prospect that the plaintiff in this case would pursue her state law claims in state court based on USX's imputed liability for Bryan's actions after the date Stoutz observed them under a theory of respondeat superior is not prejudicial to the defendant for purposes of Rule 41(a)(2). Moreover, there is no evidence that the plaintiff has proceeded in bad faith during the litigation in federal court or in filing her action in state court. *See McCants, supra,* 781 F.2d at 859. Thus, the district court abused its discretion by denying the motion for voluntary dismissal based on the plaintiff's refusal to comply with a condition limiting the causes of action the plaintiff could pursue in state court to a cause of action for negligent supervision.

### B.

The district court also imposed certain conditions on the motion for voluntary dismissal in order to alleviate prejudice to the defendant from the inconvenience and resources expended on the litigation of the plaintiff's action in federal court. To remedy this prejudice, the district court conditioned dismissal on the plaintiff's payment of a portion of USX's costs and attorneys' fees incurred in the federal litigation and on agreement that the discovery material developed in federal court could be used in the state court proceedings.

We find no abuse of discretion in the requirements that the plaintiff pay a portion of USX's taxable costs and agree to the use of discovered materials in any state court proceeding. Such conditions should be imposed as a matter of course in most cases. Wright & Miller, Federal Practice and Procedure § 2366; Moore's Federal Practice, *supra.* Nor has the plaintiff raised any real challenge to these terms for dismissal.

■ The requirement that the plaintiff pay a portion of USX's attorneys' fees is another matter, however. It is evident from the record that the work and resources expended to date during this litigation will be easily carried over to litigation of the plaintiff's cause of action in state court. There is no basis, therefore, for concluding that the defendant will be prejudiced by a failure to impose this condition on the plaintiff, especially when federal discovery will be useable in the state forum. *See Tyco Laboratories Inc. v. Koppers Co.,* 627 F.2d 54, 56 (7 Cir.1980) (extensive discovery is not prejudicial where evidence discovered may be used in subsequent action). Nor do we find that the plaintiff has acted in bad faith in seeking dismissal under 41(a)(2) so as to warrant such a condition. *Supra.* Thus, we further hold, under the facts of this case, that the district court abused its discretion by denying the motion for voluntary dismissal without prejudice because of the plaintiff's refusal to pay a portion of the defendant's attorneys' fees arising from the litigation of this action in federal court.

### III.

The plaintiff in this appeal also challenges the district court's orders denying her motion to amend her complaint, excluding evidence that may be introduced at trial that Bryan harassed the plaintiff prior to the date that Stoutz became aware of this harassment, and limiting the claims of action at trial under which the plaintiff could recover to a theory of negligent supervision. We need not decide these issues because, having decided that the plaintiff's motion for voluntary dismissal should be granted on terms which are agreeable to the plaintiff, these questions should be addressed by the state courts of South Carolina.

REVERSED AND REMANDED.

JAMES DICKSON PHILLIPS, Circuit Judge, dissenting:

I respectfully dissent. Under the circumstances of this case, I do not think the

district court abused its discretion in imposing all of the conditions to allowing Davis to dismiss her federal action without prejudice. In particular, I disagree with the majority's conclusion that it was an abuse of discretion to impose the condition that Davis must limit her state law action to claims of negligent supervision after Stoutz (hence USX by imputation) became aware of Bryan's alleged tortious conduct.

I accept the majority's careful and complete statement of the general legal principles controlling the allowance of dismissals without prejudice under Fed.R.Civ.P. 41(a)(2). In particular, I agree with the recognition, op. 1274, that dismissal withoutprejudice may properly be conditioned upon a claimant's limiting her prosecution of claims in other courts to those not already adversely determined or faced with imminent adverse determination in the federal action. *See generally* 5 Moore's Federal Practice ¶ 41.05[1] (1986). That wise principle simply recognizes that it is unfair to a defendant to let a claimant select a forum in which to prosecute her claims, then be allowed to bail out scot-free to try the same claims in another forum after losing on the merits or seeing the adverse handwriting on the wall in the first chosen forum.

The majority finds that principle not applicable here, however, because in its view the claims sought to be precluded by the imposition of a condition had not been adversely determined (become the "law of the case") in the federal action. With all deference, I simply disagree with that analysis.

Whatever the uncertainties resulting from the three-way division, our earlier panel decision clearly held, applying South Carolina law on the authority of our earlier decision in *Rabon v. Guardsmark, Inc.*, 571 F.2d 1277 (4th Cir.1978), that an employer is not liable for the intentional torts of its employee not committed in furtherance of the employer's business and that, on the facts here, this precluded Davis' recovery for Bryan's reprehensible conduct. *See Davis v. United States Steel Corp.*, 779 F.2d 209, 211–12 (4th Cir.1985). The majority opinion here finds this holding limited to the period of time before Stoutz (hence USX) learned of Bryan's tortious conduct.[1]

This, with all respect, misinterprets the legal significance of the earlier panel decision's holding that Davis could proceed with a direct claim against USX for *its* "negligent supervision" of Bryan once USX knew (through Stoutz) of Bryan's earlier conduct. That holding cannot properly be understood also to open up a parallel respondeat superior claim based directly upon Bryan's conduct *after that time.* Respondeat superior liability does not depend upon whether an employer knows (either directly or by imputation) of an employee's tortious conduct.[2] If, as the earlier panel

---

1. The majority finds this limitation in the portion of Judge Murnaghan's lead opinion quoted in its footnote 2, at op. 1274. With all respect, that passage can properly be read only as referring to the means by which USX, as of the date of Stoutz' knowledge, could be charged with that same knowledge—i.e., by "imputation." *"Respondeat superior"* is only used there as a synonym for, or a means of, "imputation of knowledge." *See* 779 F.2d at 211 ("fact-finder [permitted] to establish under the doctrine of *respondeat superior* that the observations and inaction of ... Stoutz, should be imputed to the company"). Without regard to the precision of this usage, its intended meaning is plain in total context of the lead opinion. That opinion specifically relies upon *Rabon* as supplying the principle of South Carolina law which precluded *any* recovery against USX under *respondeat superior* principles for Bryan's conduct. *See id.* at 211–12. *Rabon* had nothing in it suggesting that the intentional tort exception to vicarious

liability depended upon the lack of knowledge of an employer. I so understood the lead opinion at the time, *see id.* at 214 (Phillips, J., concurring and dissenting); I still so understand it; and the district court was absolutely justified in so understanding it.

2. Challenging the accuracy of this general assertion, the majority, op. 1274 n. 3, cites as countervailing authority Prosser, *Law of Torts* § 70 (1971) (at p. 463) and a Prosser-cited South Carolina case, *Carroll v. Beard-Laney, Inc.*, 207 S.C. 339, 35 S.E.2d 425, 426 (1945). With deference, both deal only with the extent to which employer knowledge, hence foreseeability, may operate to restrict the "frolic or detour" spatial limitation on vicarious liability. Neither deals with the related but quite different matter of vicarious liability for intentional torts arguably wholly personal to the employee. As to that, the general principle remains that, even under the most liberal view, vicarious liability arises

decision plainly held, USX was not vicariously liable in respondeat superior for Bryan's conduct, it was no more liable on that theory after than before the employer came to know of the conduct. Nothing in the earlier panel decision suggests anything to the contrary. That decision left open only the possibility that USX might be found directly, not vicariously, liable for its own negligent failure to supervise Bryan *after* knowledge of his earlier depredations were imputed to it through Stoutz. The district court was prepared faithfully to allow Davis to attempt proof under that theory, and ultimately did allow the effort that was then aborted by Davis' concession of inability to make the required proof.

The district court, in my opinion, correctly assessed the situation at the time Davis sought dismissal without prejudice. At that point, Davis had, as a matter of the law of the case, lost as to *any* claim based upon a respondeat superior theory of USX's vicarious liability for Bryan's tortious conduct. Over Judge Butzner's dissent, this court had earlier held that Bryan's intentional conduct, without regard to when it occurred, was not in furtherance of USX's business. If that holding proceeded to incorporation in a final judgment in the district court, as it surely was then proceeding, it would be transformed from mere "law of the case" to res judicata. What Davis sought, therefore, to USX's considerable prejudice, was freedom from that inexorably approaching consequence. Dismissal without prejudice under Fed.R. Civ.P. 41(a)(1), of course, specifically avoids that consequence. The district court in my judgment was well within its discretion in refusing to grant this great indulgence to Davis at USX's expense.

The district court's action, which I would affirm, may seem to reach a harsh result, smacking somewhat unduly of "technicali-

ty." But when the matter is put in perspective that simply is not a proper view of things.

This claimant, with a choice of state and federal forums to prosecute her state claims against USX, deliberately chose the federal forum, and sought there to prosecute her claims through to final judgment. This carried the inevitable risk of defeat on the merits, with full res judicata effect. It also deliberately invoked the federal forum as the chosen one to apply state law to the state common law claims, thereby risking defeat by a federal misunderstanding or misapplication of state law. As matters developed, the claimant, having lost on the merits on the state law claims in district court, decided for purely tactical reasons to abandon her federal Title VII claim. That was a perfectly viable claim, assuming, as seemed quite likely, that Davis could substantially prove her allegations about Bryan's conduct. *See Meritor Savings Bank, FSB v. Vinson,* —— U.S. ——; 106 S.Ct. 2899, 91 L.Ed.2d 49 (1986); *Katz v. Dole,* 709 F.2d 251 (4th Cir.1983). This tactical decision by Davis may be quite understandable from the standpoint of the remedies available under Title VII in relation to those available under the state law claims and in light of the desire to concentrate on reaching an expeditious decision on the latter. It nevertheless was a decision made by claimant, not by the federal court to which she had brought that probably winning federal claim. Its result was to leave only the state law claims before the federal courts. On appeal, the district court's rejection of the state respondeat superior claim was affirmed by this court which nevertheless, though erroneously in my view, *see* 779 F.2d at 214–15 (Phillips, J., concurring and dissenting), found in the record a viable alternative claim of "negligent supervision" directly against USX.

only with respect to conduct that in part at least is "in furtherance of the employer's business." *Restatement (Second) Agency*, § 235. Foreseeability has been recognized as a factor in such cases only to the extent that the very nature of the job is likely to provoke unauthorized tortious conduct, to be "not unexpectable." *Id.* § 245 comments *a., c., f.* (debt collection, repossession duties, etc.); *cf.* Prosser, *Law of Torts*

§ 70, pp. 464–67. We specifically recognized in *Rabon* and, by necessity, in this case, that South Carolina might impose liability in a suitable case under this principle. In both cases, however, we found the principle not applicable, as a matter of South Carolina law, to the facts of the cases; specifically, because in neither was the conduct in any way "in furtherance of the employer's business."

So matters stood on remand when Davis asked in effect to be allowed to relitigate the failed respondeat superior claims belatedly in the state forum.

Under these circumstances, the district court quite properly concentrated mainly upon the unfairness threatened to USX by allowing unburdened discontinuance. At that point this was not a case in which, because matters had not proceeded to decision on the merits, nothing more was involved than honoring a preference for another court, "just as good," as the one from which unburdened dismissal was sought. *Cf. Young v. Southern Pacific Co.*, 25 F.2d 630, 632 (2d Cir.1928) (L. Hand, concurring). Much more prejudice was threatened for USX than the mere "prospect of a subsequent lawsuit." *Cf. McCants v. Ford Motor Co.*, 781 F.2d 855, 857 (11th Cir.1986). What was threatened, indeed what inevitably was to occur, was the loss of a favorable determination fairly obtained in a trial court and affirmed on appeal.

It may be thought that the end result—relegation of the state respondeat superior claim (albeit in temporally truncated form) to state court for unburdened resolution—is so just a result for reasons of comity that it should be compelled. Davis suggests, and the majority seems to accept the possibility, see op. p. 1273, that a recent South Carolina decision, *Crittenden v. Thompson-Walker Co.*, 288 S.Ct. 112, 341 S.E.2d 385 (App.1986), may have drawn in question our earlier panel decision's reliance upon *Rabon* as authority for South Carolina respondeat superior law in the circumstances of this case. Be that as it may, and to me *Crittenden* is easily distinguishable in its facts from both this case and *Rabon*, it bears repeating that Davis deliberately chose the federal courts as arbiters of her state law respondeat superior claim, hence as chosen "finders" of state law on that issue.

I do not think that the district court in these circumstances was bound to treat the adverse federal determination as no more than a limited-risk test run by Davis. This is the result effectively compelled by the finding of an abuse of discretion here.