**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALFRED W. GROSS, Commissioner of
Insurance, Bureau of Insurance, State
Corporation Commission of the
Commonwealth of Virginia, as Deputy
Receiver of Home Warranty
Corporation, Home Owners Warranty
Corporation and HOW Insurance
Company, a Risk Retention Group in
Receivership and successor to Steven
T. Foster (formerly Commissioner of
Insurance),
Plaintiff-Appellee,

v.

ROBERT F. SPIES; JOSEPH CHUDNOW;
DALE C. DEHARPPORT; JOHN J.
KOELEMIJ; AARON H. KOKLEY; E. RAY                    No. 96-2146
KOTHE; JACK LAGESCHULTE; SANFORD B.
MIOT; STANLEY WARANCH,
Defendants-Appellants,

and

WILLIAM F. KENNY; ROBERT W.
CRANDALL; J. ROGER GLUNT; MARY E.
POWERS; JOE N. VAN VALER; RICHARD
OPRENCHAK; H. KENNETH SEEBER;
JAMES I. BARNETT; GLENN M. BURNS;
TERENCE S. COOKE; NATIONAL ACADEMY
OF CONCILIATORS; NATIONAL
ASSOCIATION OF HOME BUILDERS OF THE
UNITED STATES; COLTON & BOYKIN,
P.C.; BOYKIN & CASANO, P.C.;
HAMILTON H. BOYKIN; HOME OWNERS

WARRANTY CORPORATION (COUNCIL)OF
HOUSTON, INCORPORATED; HOME OWNERS
WARRANTY COUNCIL OF METROPOLITAN
DALLAS, INCORPORATED; HOME OWNERS
WARRANTY COUNCIL OFTHE BUILDERS
ASSOCIATION, INCORPORATED, the Fort
Worth Council; ERNST & YOUNG, LLP;
DELOITTE & TOUCHE, LLP,
Defendants,

CIGNA INSURANCE COMPANY, d/b/a INA,
Underwriters Insurance Company;
STATE CORPORATION COMMISSION OF THE
COMMONWEALTH OF VIRGINIA,
Parties in Interest.

ALFRED W. GROSS, Commissioner of
Insurance, Bureau of Insurance, State
Corporation Commission of the
Commonwealth of Virginia, as Deputy
Receiver of Home Warranty
Corporation, Home Owners Warranty
Corporation and HOW Insurance
Company, a Risk Retention Group in
Receivership and successor to Steven

T. Foster (formerly Commissioner of
Insurance),
Plaintiff-Appellee,

v.

COLTON & BOYKIN, P.C.; BOYKIN &
CASANO, P.C.; HAMILTON H. BOYKIN,
Defendants-Appellants,

and

No. 96-2147

2

ROBERT F. SPIES; WILLIAM F. KENNY;
JOSEPH CHUDNOW; ROBERT W.
CRANDALL; DALE C. DEHARPPORT;
J. ROGER GLUNT; JOHN J. KOELEMIJ;
AARON H. KOKLEY; E. RAY KOTHE;
JACK LAGESCHULTE; SANFORD B. MIOT;
MARY E. POWERS; JOE N. VAN VALER;
STANLEY WARANCH; RICHARD
OPRENCHAK; H. KENNETH SEEBER; JAMES
I. BARNETT; GLENN M. BURNS; TERENCE
S. COOKE; NATIONAL ACADEMY OF
CONCILIATORS; NATIONAL ASSOCIATION OF
HOME BUILDERS OF THE UNITED STATES;
HOME OWNERS WARRANTY CORPORATION
(COUNCIL)OF HOUSTON, INCORPORATED;
HOME OWNERS WARRANTY COUNCIL OF
METROPOLITAN DALLAS, INCORPORATED;
HOME OWNERS WARRANTY COUNCIL OF
THE BUILDERS ASSOCIATION,
INCORPORATED, the Fort Worth Council;
ERNST & YOUNG, LLP; DELOITTE &
TOUCHE, LLP,
Defendants,

CIGNA INSURANCE COMPANY, d/b/a INA,
Underwriters Insurance Company;
STATE CORPORATION COMMISSION OF THE
COMMONWEALTH OF VIRGINIA,
Parties in Interest.

3

ALFRED W. GROSS, Commissioner of Insurance, Bureau of Insurance, State Corporation Commission of the Commonwealth of Virginia, as Deputy Receiver of Home Warranty Corporation, Home Owners Warranty Corporation and HOW Insurance Company, a Risk Retention Group in Receivership and successor to Steven T. Foster (formerly Commissioner of Insurance),
Plaintiff-Appellee,

v.

NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES,
Defendant-Appellant,

and

ROBERT F. SPIES; WILLIAM F. KENNY; JOSEPH CHUDNOW; ROBERT W. CRANDALL; DALE C. DEHARPPORT; J. ROGER GLUNT; JOHN J. KOELEMIJ; AARON H. KOKLEY; E. RAY KOTHE; JACK LAGESCHULTE; SANFORD B. MIOT; MARY E. POWERS; JOE N. VAN VALER; STANLEY WARANCH; RICHARD OPRENCHAK; H. KENNETH SEEBER; JAMES I. BARNETT; GLENN M. BURNS; TERENCE S. COOKE; NATIONAL ACADEMY OF CONCILIATORS; COLTON & BOYKIN, P.C.; BOYKIN & CASANO, P.C.; HAMILTON H. BOYKIN; HOME OWNERS WARRANTY CORPORATION (COUNCIL)OF HOUSTON, INCORPORATED; HOME OWNERS

No. 96-2149

WARRANTY COUNCIL OF METROPOLITAN
DALLAS, INCORPORATED; HOME OWNERS
WARRANTY COUNCIL OF THE BUILDERS
ASSOCIATION, INCORPORATED, the Fort
Worth Council; ERNST & YOUNG, LLP;
DELOITTE & TOUCHE, LLP,
Defendants,

CIGNA INSURANCE COMPANY, d/b/a INA,
Underwriters Insurance Company;
STATE CORPORATION COMMISSION OF THE
COMMONWEALTH OF VIRGINIA,
Parties in Interest.

ALFRED W. GROSS, Commissioner of
Insurance, Bureau of Insurance, State
Corporation Commission of the
Commonwealth of Virginia, as Deputy
Receiver of Home Warranty
Corporation, Home Owners Warranty
Corporation and HOW Insurance
Company, a Risk Retention Group in
Receivership and successor to Steven
T. Foster (formerly Commissioner of

Insurance),
Plaintiff-Appellee,

v.

WILLIAM F. KENNY; H. KENNETH
SEEBER; JAMES I. BARNETT; GLENN M.
BURNS; TERENCE S. COOKE,
Defendants-Appellants,

and

No. 96-2150

ROBERT F. SPIES; JOSEPH CHUDNOW;
ROBERT W. CRANDALL; DALE C.
DEHARPPORT; J. ROGER GLUNT; JOHN J.
KOELEMIJ; AARON H. KOKLEY; E. RAY
KOTHE; JACK LAGESCHULTE; SANFORD B.
MIOT; MARY E. POWERS; JOE N. VAN
VALER; STANLEY WARANCH; RICHARD
OPRENCHAK; NATIONAL ACADEMY OF
CONCILIATORS; NATIONAL ASSOCIATION OF
HOME BUILDERS OF THE UNITED STATES;
COLTON & BOYKIN, P.C.; BOYKIN &
CASANO, P.C.; HAMILTON H. BOYKIN;
HOME OWNERS WARRANTY CORPORATION
(COUNCIL)OF HOUSTON, INCORPORATED;
HOME OWNERS WARRANTY COUNCIL OF
METROPOLITAN DALLAS, INCORPORATED;
HOME OWNERS WARRANTY COUNCIL OF
THE BUILDERS ASSOCIATION,
INCORPORATED, the Fort Worth Council;
ERNST & YOUNG, LLP; DELOITTE &
TOUCHE, LLP,
<u>Defendants,</u>

CIGNA INSURANCE COMPANY, d/b/a INA,
Underwriters Insurance Company;
STATE CORPORATION COMMISSION OF THE
COMMONWEALTH OF VIRGINIA,
<u>Parties in Interest.</u>

6

ALFRED W. GROSS, Commissioner of Insurance, Bureau of Insurance, State Corporation Commission of the Commonwealth of Virginia, as Deputy Receiver of Home Warranty Corporation, Home Owners Warranty Corporation and HOW Insurance Company, a Risk Retention Group in Receivership and successor to Steven T. Foster (formerly Commissioner of Insurance),
Plaintiff-Appellee,

v.

HOME OWNERS WARRANTY CORPORATION (COUNCIL)OF HOUSTON, INCORPORATED;

HOME OWNERS WARRANTY COUNCIL OF METROPOLITAN DALLAS, INCORPORATED,
Defendants-Appellants,

and

ROBERT F. SPIES; WILLIAM F. KENNY; JOSEPH CHUDNOW; ROBERT W. CRANDALL; DALE C. DEHARPPORT; J. ROGER GLUNT; JOHN J. KOELEMIJ; AARON H. KOKLEY; E. RAY KOTHE; JACK LAGESCHULTE; SANFORD B. MIOT; MARY E. POWERS; JOE N. VAN VALER; STANLEY WARANCH; RICHARD OPRENCHAK; H. KENNETH SEEBER; JAMES I. BARNETT; GLENN M. BURNS; TERENCE S. COOKE; NATIONAL ACADEMY

No. 96-2203

7

OF CONCILIATORS; NATIONAL
ASSOCIATION OF HOME BUILDERS OF THE
UNITED STATES; COLTON & BOYKIN,
P.C.; BOYKIN & CASANO, P.C.;
HAMILTON H. BOYKIN; HOME OWNERS
WARRANTY COUNCIL OFTHE BUILDERS
ASSOCIATION, INCORPORATED, the Fort
Worth Council; ERNST & YOUNG, LLP;
DELOITTE & TOUCHE, LLP,
Defendants,

CIGNA INSURANCE COMPANY, d/b/a INA,
Underwriters Insurance Company;
STATE CORPORATION COMMISSION OF THE
COMMONWEALTH OF VIRGINIA,
Parties in Interest.

ALFRED W. GROSS, Commissioner of
Insurance, Bureau of Insurance, State
Corporation Commission of the
Commonwealth of Virginia, as Deputy
Receiver of Home Warranty
Corporation, Home Owners Warranty
Corporation and HOW Insurance

Company, a Risk Retention Group in
Receivership and successor to Steven
T. Foster (formerly Commissioner of
Insurance),
Plaintiff-Appellant,

v.

No. 96-2204

8

NATIONAL ASSOCIATION OF HOME
BUILDERS OF THE UNITED STATES;
COLTON & BOYKIN, P.C.; BOYKIN &
CASANO, P.C.; HAMILTON H. BOYKIN;
HOME OWNERS WARRANTY CORPORATION
(COUNCIL)OF HOUSTON, INCORPORATED;
HOME OWNERS WARRANTY COUNCIL OF
METROPOLITAN DALLAS, INCORPORATED;
HOME OWNERS WARRANTY COUNCIL OF
THE BUILDERS ASSOCIATION,
INCORPORATED, the Fort Worth Council;
ERNST & YOUNG, LLP; DELOITTE &
TOUCHE, LLP,
Defendants-Appellees,

and

ROBERT F. SPIES; WILLIAM F. KENNY;
JOSEPH CHUDNOW; ROBERT W.
CRANDALL; DALE C. DEHARPPORT; J.
ROGER GLUNT; JOHN J. KOELEMIJ;
AARON H. KOKLEY; E. RAY KOTHE;
JACK LAGESCHULTE; SANFORD B. MIOT;
MARY E. POWERS; JOE N. VAN VALER;
STANLEY WARANCH; RICHARD
OPRENCHAK; H. KENNETH SEEBER;
JAMES I. BARNETT; GLENN M. BURNS;
TERENCE S. COOKE; NATIONAL ACADEMY
OF CONCILIATORS,
Defendants,

CIGNA INSURANCE COMPANY, d/b/a INA,
Underwriters Insurance Company;
STATE CORPORATION COMMISSION OF THE
COMMONWEALTH OF VIRGINIA,
Parties in Interest.

9

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-95-832-3)

Argued: December 4, 1997

Decided: January 13, 1998

Before WILKINS and HAMILTON, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles Frederick Witthoefft, HIRSCHLER, FLEI-
SCHER, WEINBERG, COX & ALLEN, Richmond, Virginia, for
Appellants. Robert Dean Perrow, WILLIAMS, MULLEN, CHRIS-
TIAN & DOBBINS, Richmond, Virginia, for Appellees. **ON BRIEF:**
Michael P. Falzone, David W. Robinson, HIRSCHLER, FLEI-
SCHER, WEINBERG, COX & ALLEN, Richmond, Virginia;
Michael S. Sundermeyer, WILLIAMS & CONNOLLY, Washington,
D.C.; Jack B. McClard, Edward J. Fuhr, Mark E. Merrmann, Kathleen
B. Murphy, HUNTON & WILLIAMS, Richmond, Virginia; Craig T.
Merritt, John Tracy Walker, IV, CHRISTIAN & BARTON, L.L.P.,
Richmond, Virginia; William A. Musgrove, MEZZULLO &
MCCANDLISH, Richmond, Virginia, for Appellants. Howard W.
Dobbins, Robert E. Eicher, John L. Walker, III, Elizabeth P. Mason,
WILLIAMS, MULLEN, CHRISTIAN & DOBBINS, Richmond, Vir-
ginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

The issue in this case is whether the district court abused its discretion when it granted a Federal Rule of Civil Procedure 41(a)(2) motion for voluntary dismissal in a suit filed by the Commissioner of Insurance of the State Corporation Commission of the Commonwealth of Virginia (the Commission), acting as Deputy Receiver of a group of insurance companies under an order of receivership, against numerous individuals and entities who allegedly engaged in illegal and improper conduct that resulted in the insolvency and hazardous financial condition of the companies. Concluding that the district court did not abuse its discretion, we affirm.

I.

Prior to receivership, the Homeowners Warranty Corp. (HOW) administered one of the largest new home warranty programs in the nation. HOW was formed in 1973 by the National Association of Homebuilders (NAHB), a trade association of homebuilders and affiliated entities. HOW administered a homebuilder warranty protection plan, known as the Homeowners Warranty Program (HOW Program). NAHB owned both HOW and the HOW Program until approximately 1981. Thereafter, NAHB transferred its stock in HOW to the Home Warranty Corporation (HWC), a non-stock membership corporation. In 1981, the How Insurance Company (HOWIC) was incorporated as a risk retention group, and in 1982, HOWIC began underwriting the HOW Program. HWC, a Delaware corporation, wholly owned both HOW, a District of Columbia corporation, and HOWIC, a Virginia corporation. All three companies (collectively, the HOW Companies) were operated as a single business enterprise.

In 1991, the Virginia Bureau of Insurance (Bureau) began an investigation into HOWIC's financial status. This investigation ultimately led to receivership proceedings. On October 14, 1994, pursuant to Chapter 15, Article 38.2 of the Virginia Code, the Circuit Court of the City of Richmond, Virginia (the Circuit Court) entered a final order (the Receivership Order) appointing the Commission as Receiver for the HOW Companies. Three days later, the United States District

11

Court for the Eastern District of Virginia entered a permanent injunction enjoining the HOW Companies from engaging in the business of insurance and enjoining certain parties from interfering with the Commission's receivership. Both orders were entered with the consent of the HOW Companies.

Under the terms of the Receivership Order, the Receiver was authorized to take all actions it deemed advisable in connection with the rehabilitation or liquidation of the HOW Companies. Steven T. Foster, the Commissioner of Insurance of Virginia's State Corporation Commission, was appointed as the Deputy Receiver (D.R.).[1] In addition to setting forth the terms of the receivership, the Receivership Order included a provision requiring all claims against the Deputy Receiver to be filed with the Commission and permanently enjoined any claimant from filing a claim against the Deputy Receiver in another jurisdiction, except with leave of the Commission.

While exercising his duties under the Receivership Order, the D.R. identified certain persons who, by their allegedly improper and illegal conduct, were most responsible for the financial condition of the HOW Companies. On October 10, 1995, the D.R. filed a complaint in the United States District Court for the Eastern District of Virginia against fifteen former officers, directors, and an employee of the HOW Companies (collectively, the Original Defendants), alleging one federal securities fraud claim and eleven claims under Virginia law, including breach of fiduciary duty and fraud. The D.R. sought compensatory damages in excess of $100 million, as well as "substantial" punitive damages and other relief. Essentially, the D.R. alleged that the defendants' illegal and improper conduct had resulted in the insolvency and hazardous financial condition of the HOW Companies.

In the complaint, the D.R. also alleged misconduct by certain other individuals and entities he did not name as defendants. For example, the D.R. alleged that the HOW Companies' arrangement with NAHB was so extensive as to "effectively make the HOW Program an exten-

_____

[1] Alfred W. Gross has succeeded Steven T. Foster as Commissioner of Insurance and, therefore, he has been substituted for Steven Foster in these proceedings.

12

sion of the NAHB." (J.A. 48). Similarly, in several places in the complaint, the D.R. alleged the defendants acted with substantial assistance from their consultants, such as auditors and actuaries. Additionally, the complaint stated that the D.R. was engaging in a continuing investigation of "the causes of, and circumstances surrounding, the receivership of the [HOW] Companies" and that in connection with this investigation, certain tolling agreements had been entered into by the D.R. and other persons or entities. (J.A. 33). The complaint stated further that "[b]ut for the existence of these Tolling Agreements, these other persons or entities would be named as defendants in this Complaint and may ultimately be so named." Id. On December 15, 1995, the Original Defendants moved to dismiss the state law claims on statute of limitations and other grounds.

On January 15, 1996, the D.R. and twelve individuals residing in Texas and representing a putative class of homeowners, filed suit in state court in Dallas County, Texas, against a number of defendants, including NAHB, several local "HOW Councils," regional affiliates that performed agency functions for the HOW Companies, accountants, actuaries, lawyers and law firms, and individual officers and directors of the HOW Companies, alleging a variety of violations of state law. None of the defendants named in the Texas class action suit was named as a defendant in the federal suit in Virginia. According to the D.R., he filed suit in Texas because at the time he took over the affairs of the HOW Companies, their executive offices were located in Arlington, Virginia, but their operations center and most company employees were located in Dallas, Texas. In addition, all claims and underwriting functions for the HOW Companies were handled from the Dallas, Texas location, and the largest percentage of insured homeowners and the largest percentage of claims against the HOW Companies were located in Texas.

On February 7 and 8, 1996, fourteen of the defendants in the Texas class action suit (the Intervenors) filed motions to intervene in this federal suit. At the time they filed their motions, the Intervenors also filed proposed answers to the D.R.'s complaint, and two of them, NAHB and Deloitte & Touche, LLP, filed proposed counterclaims. The Intervenors argued that the disposition of the federal suit might, as a practical matter, impair or impede their ability to protect their interests and that the claims of the D.R. and the defenses of the Origi-

13

nal Defendants had questions of law and fact in common with the claims and defenses of the Intervenors. In addition, the Intervenors argued that some of the allegations contained in the D.R.'s complaint in the federal suit in Virginia alleged wrongdoing by parties named as defendants in the Texas action.

The D.R. opposed the Intervenors' motions, arguing that because he represented a putative class in the Texas action, regardless of the district court's decision on the motions to intervene, there would still be an action in Texas against the Intervenors and, therefore, duplicative litigation. In addition, the D.R. argued that the addition of fourteen defendants would add a significant amount of time and expense to the federal litigation because of different issues and additional parties involved.

On March 6, 1996, the district court entered an order granting the Intervenors' motions to intervene under Federal Rule of Civil Procedure 24(b), allowing permissive intervention. In its order, the district court also granted the D.R. thirty days to amend his complaint if he wished. That same day, the answers and counterclaims of two Intervenors, NAHB and Deloitte & Touche, LLP, were filed. In its counterclaim, NAHB sought indemnity, based on an alleged indemnity agreement between NAHB and HOW, for any losses that NAHB might incur as a result of claims pending against it in the Texas action and the Virginia action.

On March 15, 1996, the district court entered a memorandum opinion and order in which it denied the Original Defendants' motions to dismiss the D.R.'s complaint on all bases argued by the defendants, with the exception of the statue of limitations defense. With respect to the Original Defendants' statute of limitations defense, the district court took this argument under advisement and simply denied the motions to dismiss in all other respects.

On April 5, 1996, the D.R. filed a First Amended Complaint against all defendants, including the Original Defendants and the Intervenors, in which he eliminated the federal securities claim and asserted additional state law claims, including numerous violations of Texas law. At the same time, the D.R. moved to dismiss his own case for lack of jurisdiction or, alternatively, for voluntary dismissal under

14

Federal Rule of Civil Procedure 41(a)(2), or for a stay, or for a continuance of the July 1, 1996 trial date. The D.R. asked, in particular, that the district court enter an order declining to exercise supplemental jurisdiction over the remaining state law claims, since there were no federal causes of action remaining in the suit, and dismissing the action without prejudice or, in the alternative, that the district court enter an order voluntarily dismissing the action without prejudice under Rule 41(a)(2). If the district court declined to dismiss the action, the D.R. moved for the entry of an order staying the action pending resolution of the Texas action or for the entry of an order rescheduling the trial date until March 1997.

Also in early April 1996, the Intervenors filed a motion in the Circuit Court, seeking clarification of the Receivership Order. Specifically, the Intervenors sought permission to assert counterclaims against the D.R. in the Virginia and Texas actions. On April 9, 1996, the Circuit Court released a letter opinion in which it agreed to modify the Receivership Order to permit the Intervenors to file counterclaims against the D.R. in the Virginia action and the Texas action, despite the fact that the D.R. had not consented to suit against him in either forum. The opinion stated that the Circuit Court would modify the Receivership Order to permit the Intervenors' counterclaims and that counsel for the Intervenors could "draft a suitable order allowing the change." (J.A. 1970). On April 22, 1996, several of the Intervenors, Colton & Boykin, P.C.; Boykin & Casano, P.C.; and Hamilton H. Boykin (collectively, the Boykin Intervenors) filed an answer and counterclaims to the D.R.'s First Amended Complaint. The Boykin Intervenors' counterclaims consisted of three indemnity claims against HOW, HWC, and HOWIC, respectively.

On April 23 and April 29, 1996, the district court held hearings on the D.R.'s voluntary motion to dismiss the action under Federal Rule of Civil Procedure 41(a)(2). On May 9, 1996, the district court entered an order granting the D.R.'s motion for voluntary dismissal on the condition that the D.R. would not be able to assert in the Texas action any claims against the defendants barred by the laws of the Commonwealth of Virginia and that the D.R. pay to each of the defendants a reasonable sum for the reimbursement of expenses incurred in opposing the D.R.'s motion for dismissal without prejudice.

15

Various of the defendants subsequently moved the district court under Federal Rule of Civil Procedure 59(e) and 60 to reconsider and/or to clarify its order of dismissal. On July 17, 1996, the district court verbally clarified its order by indicating that the condition precluding the assertion of any claims against the defendants barred under Virginia state law referred only to claims that may be asserted against the Original Defendants, not to claims that may be asserted against the Intervenors in the Texas action. On July 18, 1996, the district court entered its final order, declaring the clarification issue to be moot and denying all remaining motions.

Eighteen of the twenty-nine defendants affected by the May 9 order noted a timely appeal, including ten of the fourteen Intervenors. One of the Intervenors that asserted a counterclaim against the D.R., Deloitte & Touche, LLP did not appeal. The other Intervenors with counterclaims, NAHB and the Boykin Intervenors, have joined in this appeal.[2]

On October 8, 1996, the Circuit Court issued a second letter opinion, in which it reconsidered, pursuant to a motion for reconsideration filed by the D.R. and the Commission, its previous letter opinion permitting the modification of the Receivership Order to permit claims against the D.R. in the Virginia and Texas suits. In this second letter opinion, the Circuit Court reversed and declined to modify its October 1994 Receivership Order precluding any claims against the D.R. unless filed with the Commission. Approximately one month later, on November 15, 1996, the Circuit Court entered two orders: in one order, the court officially ordered, in accordance with its first letter opinion of April 9, 1996, that the Receivership Order be modified to permit the Intervenors to assert counterclaims against the D.R. in the Virginia and Texas suits; in the second order, the court officially reversed its position as set forth in the April 9, 1996 letter opinion and ordered that all claims, including counterclaims, of any type asserted

_____

[2] The D.R. noted a timely cross-appeal and argues that the district court abused its discretion when it permitted the intervention of fourteen additional defendants by granting the Intervenors' motions to intervene. Because we are affirming the district court's dismissal of this action, we need not address the merits of the D.R.'s cross-appeal.

16

against the receivership must be submitted in accordance with the original provisions of the Receivership Order.

Subsequently, NAHB and the HOW Council of Houston, Texas filed petitions with the Commission, seeking, inter alia, permission to file counterclaims against the D.R. in any forum in which the D.R. files suit. On November 4, 1997, the Commission entered a final order dismissing these petitions.

II.

We review a district court's decision to grant a plaintiff's motion to dismiss the complaint without prejudice under Federal Rule of Civil Procedure 41(a)(2) for abuse of discretion. See Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987); see also Marex Titanic, Inc. v. Wrecked & Abandoned Vessel, 2 F.3d 544, 546 (4th Cir. 1993) (district court's decision to grant motion to dismiss under Rule 41(a)(2) is "within the court's discretion"). Rule 41(a)(2) provides, in pertinent part:

> Except as provided in paragraph (1) of this subdivision of this rule . . ., an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.

FED. R. CIV. P. 41(a)(2). This rule, then, permits a plaintiff to dismiss its case without prejudice but requires that the plaintiff get court approval. See Marex Titanic, 2 F.3d at 546. In addition, if a counterclaim is pending at the time the plaintiff files its motion, the district court may not grant the plaintiff's motion unless the counterclaim can remain pending for independent adjudication. The primary purpose of the rule is to freely permit voluntary dismissals while protecting the nonmovant from unfair treatment. See Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994); Davis, 819 F.2d at 1273; see also 9

17

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2364 (1995).

In this case, appellants argue both that the D.R.'s motion was improperly granted because it unduly prejudiced them and that the D.R.'s motion was improperly granted because counterclaims of two Intervenors were pending at the time the action was dismissed and the district court failed to retain them for independent adjudication. We will consider each argument in turn.

A.

As a general rule, a plaintiff's motion for voluntary dismissal without prejudice under Rule 41(a)(2) should not be denied absent plain legal prejudice to the defendant. See Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997); Phillips v. Illinois Cent. Gulf R.R., 874 F.2d 984, 986 (5th Cir. 1989); Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986); McCants v. Ford Motor Co., Inc., 781 F.2d 855, 856-57 (11th Cir. 1986); 9 Wright & Miller, supra, § 2364. Factors a district court should consider in ruling on such motions are: (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending. See Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996); Grover, 33 F.3d at 718; Paulucci v. City of Duluth, 826 F.2d 780, 783 (8th Cir. 1987). These factors are not exclusive, however, and any other relevant factors should be considered by the district court depending on the circumstances of the case. See Ohlander, 114 F.3d at 1537. Courts generally agree, however, that the mere prospect of a second lawsuit is not sufficient prejudice to justify denying a motion for voluntary dismissal. See Grover, 33 F.3d at 718; Paulucci, 826 F.2d at 782; Davis, 819 F.2d at 1275. Similarly, "the possibility that the plaintiff will gain a tactical advantage over the defendant in future litigation will not serve to bar a second suit." Davis, 819 F.2d at 1275; see also American Nat'l Bank & Trust Co. v. BIC Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("The possibility that plaintiffs may gain a tactical advantage by refiling in state court is insufficient to deny a voluntary motion to dismiss without prejudice, especially when state law is involved.").

In this case, appellants argue the district court's order granting the D.R.'s motion has caused them to suffer clear legal prejudice. The first basis alleged by appellants is the loss of their statute of limitations defense that, according to appellants, bars the D.R.'s Virginia state law claims. At the time the district court granted the D.R.'s motion for voluntary dismissal, the district court had taken the Original Defendants' motions to dismiss based on the applicable Virginia statutes of limitations under advisement.

As noted above, the fact that a plaintiff may gain a tactical advantage by dismissing its suit without prejudice and refiling in another forum is not sufficient legal prejudice to justify denying a motion for voluntary dismissal. See BIC Corp., 931 F.2d at 1412; Davis, 819 F.2d at 1275. Courts are divided, however, on the precise issue of whether a valid statute of limitations defense precludes granting a plaintiff's motion for voluntary dismissal under Rule 41(a)(2). Compare McCants, 781 F.2d at 857-59 (holding that valid statute of limitations defense does not preclude voluntary dismissal without prejudice), with Metropolitan Fed. Bank v. W.R. Grace & Co., 999 F.2d 1257, 1262 (8th Cir. 1993) (holding there is clear legal prejudice where a Rule 41(a)(2) dismissal is granted in the face of a valid statute of limitations defense), and Phillips, 874 F.2d at 987 (same). Nevertheless, the appellants did not suffer clear legal prejudice in this case, even if the forfeiture of a valid statute of limitations defense constitutes clear legal prejudice and generally bars voluntary dismissal under Rule 41(a)(2), because those defendants who had filed a motion to dismiss based on Virginia statutes of limitations did not lose their defense.

As set forth above, the district court dismissed this action on the condition that the D.R. could not assert in the Texas action any claims against the Original Defendants barred by the laws of Virginia. To the extent that the appellants had asserted a legal defense under Virginia law to the Virginia state claims, such that the loss of that defense would constitute legal prejudice, then, they still have the same defense to the same claims to the extent they are raised in the Texas action. In other words, if the D.R. asserts claims against the Original Defendants under Virginia law, those defendants will be able to assert the same Virginia statute of limitations defense in Texas that they asserted in this action in the district court.

19

The appellants argue, however, that the D.R. has stated his intention to restyle the claims in the Texas action as Texas state law claims, such that the Virginia statute of limitations defense would be useless. However, this argument assumes that the D.R. has valid Texas claims against the appellants. If he does, he could have properly asserted those claims in the Virginia action and a Virginia statute of limitations defense would have been similarly useless. A Virginia statute of limitations defense pertains only to claims under Virginia law, regardless of the forum in which they are raised. By preserving the appellants' right to raise that defense to any claims asserted under Virginia law, the district court ensured that the appellants did not suffer clear legal prejudice because of forfeiture of the defense when it dismissed the D.R.'s Virginia federal suit without prejudice.

In addition to the loss of their statute of limitations defense, the appellants also argue that the district court's order dismissing the complaint legally prejudices them because: (1) the appellants made an extraordinary effort and incurred significant expense in obtaining discovery and preparing the case for trial; (2) the D.R.'s purpose in seeking voluntary dismissal was to avoid the consequences of his lack of due diligence and trial preparation; (3) the effect of the dismissal is to reverse the district court's ruling in favor of intervention; (4) the appellants are insured under "wasting" liability insurance policies; (5) key witnesses were within the subpoena power of the district court but are not subject to subpoena in Texas; and (6) Virginia's business judgment rule is more favorable to appellants than Texas'. It is certainly true, as appellants argue, that they incurred significant expense in obtaining discovery and preparing for trial in this case, particularly since much of the discovery they sought was located in Texas. However, there is no evidence suggesting that the D.R. was not diligent in pursuing his claims or that the D.R.'s explanation of needing additional time to prepare to try claims against fourteen additional defendants (following intervention) was disingenuous. With respect to the appellants' insurance policies, some of the appellants are apparently insured under a policy in which the policy coverage is reduced by defense costs and, thus, is "wasting." Although the D.R. contests this interpretation of the policies at issue, even if the appellants' interpretation is correct, this consequence can hardly constitute legal prejudice. Finally, with respect to the subpoena power and business judgment rule, appellants assert these arguments without providing

20

any support for the proposition that these concerns constitute legal prejudice. Witnesses are often outside the reach of a court's subpoena power; their testimony is still available by deposition. With respect to the business judgment rule, as set forth above, a motion for voluntary dismissal should not be denied simply because the plaintiff gains a tactical advantage in a different forum. Thus, while each of the appellants' reasons disfavoring dismissal is valid, none rises to the level of legal prejudice required to deny the D.R.'s motion.

In addition, as the D.R. argues, there were valid grounds for dismissal: (1) as a result of the intervention order, there was duplicative litigation in Virginia and Texas; (2) Texas was the only forum where all claims against all defendants could be resolved; and (3) only state law claims remained in this federal suit after the D.R. filed his First Amended Complaint in April 1996. Ultimately, it was the role of the district court to consider all relevant circumstances in this case and decide whether, in its discretion, the D.R.'s motion should be granted. Here, there were reasons favoring dismissal, and the conditions on dismissal imposed by the district court ensured that the appellants would suffer no legal prejudice as a result of the dismissal.

B.

The appellants next assert that the district court abused its discretion when it granted the D.R.'s Rule 41(a)(2) motion for voluntary dismissal because there were counterclaims pending at the time the action was dismissed and the district court failed to retain jurisdiction over them. As set forth above, Rule 41(a)(2) provides that "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication." FED. R. CIV. P. 41(a)(2). In order for this provision to apply, however, the counterclaim must have been properly filed--that is, the district court must have properly had subject matter jurisdiction over the claim. See Sams v. Beech Aircraft Corp., 625 F.2d 273, 277 (9th Cir. 1980); Armstrong v. Armstrong, 132 F.R.D. 69, 71 (D. Colo. 1990); 9 Wright & Miller, supra, § 2365.

21

In this case, two of the Intervenors, NAHB and Deloitte & Touche, filed proposed answers and counterclaims against the D.R. at the time they intervened, and these counterclaims and answers were officially filed on March 6, 1996, the day the district court permitted intervention and before the D.R. filed its motion to dismiss on April 5, 1996.[3] As noted above, Deloitte & Touche did not appeal the district court's order of voluntary dismissal and, as a result, the propriety of the district court's failure to retain jurisdiction over its counterclaim against the D.R. is not before us. However, NAHB does appeal the district court's dismissal of the Virginia action. Therefore, we must address whether the district court erred in doing so in light of NAHB's pending counterclaim.

It is undisputed that the district court did not retain jurisdiction over NAHB's counterclaim against the D.R. Therefore, if the counterclaim was properly filed, the district court's dismissal of the counterclaim was error. The D.R. argues, however, that NAHB's counterclaim was not properly filed because under the terms of the Receivership Order, claims against the D.R. could not be asserted in the Virginia action. We agree.

The straightforward terms of the Receivership Order provided that all claims against the D.R. had to be filed with the Commission, unless the D.R. agreed that a claim could be filed against him in another jurisdiction. On April 9, 1996, the Circuit Court issued a letter opinion, stating its intention to modify its Receivership Order to permit the Intervenors to file counterclaims against the D.R. in the Virginia action and the Texas action, despite the fact that the D.R. had not consented to suit against it in either forum. However, the Circuit

_____

**3** As noted earlier, a third set of Intervenors, the Boykin Intervenors, also filed an answer and counterclaim after the D.R. amended his complaint. Unlike NAHB and Deloitte & Touche, however, the Boykin Intervenors failed to file their counterclaim prior to the D.R.'s motion to dismiss and, therefore, by its terms, Rule 41(a)(2) does not act to require the district court to retain jurisdiction over this counterclaim prior to permitting dismissal. See FED. R. CIV. P. 41(a)(2) (precluding voluntary dismissal unless counterclaim can remain pending in the district court "if a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss") (emphasis added).

22

Court did not enter an order to that effect, and on October 8, 1996, the court reconsidered its previous letter opinion and reversed itself, declining to modify the Receivership Order precluding any claims against the D.R. unless filed with the Commission. Then, on November 15, 1996, the Circuit Court entered two orders: one officially modifying the Receivership Order in accordance with its April 1996 letter opinion and a second one reversing that decision and ordering all claims, including counterclaims, asserted against the D.R. as representative of the HOW Companies to be submitted in accordance with the Receivership Order. The second November 15, 1996 order, then, effectively nullified any legal effect the April 1996 letter opinion may have had and reinstated the full terms of the October 1994 Receivership Order. The Commission has recently ruled likewise, dismissing NAHB's petition seeking permission to file counterclaims in any forum in which the D.R. sues.

These decisions make clear that NAHB's counterclaim against the D.R. was improperly filed because under the terms of the Receivership Order, such claims must be filed with the Commission. While NAHB successfully challenged this provision in the Circuit Court, that court subsequently reconsidered its decision and reinstated the terms of the Receivership Order in full. Because the district court lacked subject matter jurisdiction over NAHB's counterclaim, it was not properly filed and its pendency did not preclude the voluntary dismissal of the Virginia action.

III.

In conclusion, we hold that the district court did not abuse its discretion when it granted the D.R.'s motion to voluntarily dismiss the Virginia action pursuant to Rule 41(a)(2). Accordingly, the judgment of the district court is affirmed.

AFFIRMED

23